𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

CITY OF LYNCHBURG v. SLAUGHTER.

November 25.

Absent, *Burks*, J.*

1. A municipal corporation having a general authority under its charter to contract loans or cause to be issued certificates of debt or bonds, may issue coupon bonds and sell them at public auction for less than their par value, and for bonds sold during the war might receive payment for them in Confederate money.

2. A municipal corporation having authority to provide for the poor and needy of the city in 1864, pass an ordinance for the issue of $50,000 of the coupon bonds of the city, and the ordinance provides that the proceeds shall be paid into the treasury of the city, subject to the order of the council, for the use and benefit of indigent families and citizens—HELD: A *bona fide* holder of these bonds is not required to look further than the ordinance to see whether the bonds were issued for a legitimate purpose; and his right to recovery upon the bonds will not be affected by the fact that the council may have applied the proceeds of the bonds to other purposes.

3. Though coupon bonds may have been issued by a municipal corporation for the purpose of aiding the rebellion, this not appearing on the face of the bonds, or the ordinance authorizing their issue, the bonds in the hands of a *bona fide* holder for value without notice or knowledge of the purpose, are valid, and binding upon the corporation. And though the holder of the bonds had such notice, yet if the party from whom he purchased was a *bona fide* holder for value, without such notice, the bonds are valid and binding in the hands of the present holder.

This was an action of debt in the circuit court of Bedford county, brought by Mary J. Slaughter against the city of Lynchburg, to recover the interest on a coupon bond No.

*Judge *Burks* had been counsel in the cause.

8, issued by the city of Lynchburg in 1864. The defendant pleaded "*nil debit,*" and it was agreed that under this plea the defendant might rely upon any defence, and give in any evidence that it might rely upon or give in evidence under any proper special plea. On the trial there was a verdict and judgment for the plaintiff. And thereupon the city of Lynchburg applied to a judge of this court for a writ of error and *supersedeas;* which was awarded.

Upon the trial the defendant asked for five instructions, the first of which was given, and the others refused; to which the defendant excepted. The instructions and the evidence are sufficiently set out in the opinion of Judge *Staples.*

*R. G. H. Kean,* for the appellee.

*Bocock and Davis,* for the appellants.

STAPLES, J., dilivered the opinion of the court.

This case was argued at the last term of this court by the counsel for the plaintiff. The decision was, however, deferred by consent to enable the counsel for the defend-ant to put in a written or printed brief. This has not been done, and the court at last has been compelled to decide the case without the benefit of an argument from the party taking the appeal. In order properly to understand the points of controversy, it may be proper to premise that the city council of Lynchburg is authorized by its charter "to contract loans, or cause to be issued certificates of debt or bonds, such loans, certificates or bonds, however, not to be irredeemable for a period greater than thirty-four years."

In June, 1864, the city council passed an ordinance authorizing the issue of coupon bonds to the amount of $50,000, in sums of $100, or its multiple, bearing interest at

the rate of six *per cent.*, payable semi-annually.   The ordinance directed a sale of the bonds at public auction, and the payment of " the proceeds into the treasury, subject to the order of the council, for the use and benefit of indigent families and citizens."   The bonds were accordingly sold in market to the highest bidder at the sum of $124,704.50, being a premium of about $74,000.

The object of this loan and the disposition made of the proceeds will be stated hereafter in considering another branch of the case.   The plaintiff, being the holder of a part of the bonds so issued, brought her action in the circuit court of Bedford for the recovery of the past due coupons taken therefrom.

Upon the trial in that court the defendant, the city of Lynchburg, asked for five instructions, one of which was given without objection, and the other four were refused. These four objections cover the whole ground of controversy, and in disposing of them we settle all the questions arising in the case.   It will be sufficient to state the propositions involved in each of the instructions, without quoting them in full.   And first, it is insisted that the issue and sale of the bonds for a highly depreciated currency was a violation of law, and an exercise of power on the part of the council not warranted by the city charter.

In the petition for an appeal, it is said it cannot be supposed it was the design of the legislature that the city council should be allowed, under the guise of borrowing money, to put its bonds upon the market and sell them for a currency depreciated at the rate of one dollar in gold for nine of the face value of the bonds.

This argument might have been addressed to the legislature which granted the charter to the city of Lynchburg with more propriety than to this court.   By that charter authority to contract loans and issue certificates of debts or bonds is conferred in the broadest language.   No limita-

tion is imposed with respect to the terms on which such loans may be negotiated. In the absence of some such limitation, the power to borrow money carries with it as an incident the power to agree upon the terms of the borrowing. According to a well-known usage and custom, municipal corporations almost universally contract loans by a sale of their bonds made with reference to prices current, and not to their par value.

If the argument now advanced should prevail with the courts, it would invalidate three-fourths of the municipal bonds of the country in the hands of the original purchasers. For, in but few instances, until very recently, were these securities sold at their face value. And this fact must have been well understood by the legislature when it conferred upon the various municipalties of the State the power to contract loans and issue bonds and certificates of indebtedness for municipal purposes. It has been held by the supreme court of the United States in several cases where the city charter expressly prohibits the sale of its bonds at a discount, and such a sale is nevertheless made, the city is estopped to make the defence against a *bona fide* holder for valuable consideration without notice. There the plaintiff was not the original purchaser of the bonds, but acquired them by purchase for value from the original owner, and there is nothing to show that she had any notice whatever of the price paid for them by the latter. *Woods* v. *Lawrence County*, 1 Black's U. S. R. 386; *Mercer County* v. *Hacket*, 1 Wall. U. S. R. 83, 96.

The sale of a municipal bond, as of any other bond, for a sum less than its par value may constitute usury, as was held by this court in the case of the *City of Lynchburg* v. *Norvell*, 20 Gratt. 601. After that decision was rendered, however, the legislature passed an act prohibiting municipal corporations from interposing the defence of usury in any case; and that act was held by this court to be retro-

spective in its operations.  See *Town of Danville* v. *Pace*, 25 Gratt. 1.   The act of course presupposes the issue and sale of municipal bonds at less than their face value; and its object manifestly was to take away a defence calculated to lessen the value and impair the public confidence in that class of securities.  If, however, a municipal corporation upon the same facts may substitute the plea of *ultra vires* for the plea of usury, it is obvious that the legislation on this subject has not accomplished the objects intended.

For these reasons, and others which might be given, I think the circuit court did not err in refusing to give the defendant's second instruction to the jury.

The proposition asserted in the third instruction is, that the bonds are invalid, because they were issued to be sold, and were in fact sold for Confederate money.

It would be a waste of time to discuss this proposition. The answer to it is found in the uniform decisions of this court and of the supreme court of the United States. *Thorington* v. *Smith*, 8 Wall. U. S. R. 1.

The fourth instruction asserts that whilst the city council of Lynchburg is authorized to provide for the poor of the city, this object is to be accomplished through the instrumentality of a board of overseers, and a certain mode of procedure.  But that this power does not extend to the appropriation of money to be expended under the control of a finance committee, for the use and benefit of "indigent families and citizens," and the bonds in question having been issued and sold for this latter object, which is apparent on the face of the ordinance, they are invalid in the hands of the plaintiff.  The general statutes found in the revised Code of 1865, chap. 51, sec. 5, declare who shall be the poor in a county or town.  It is therein enacted that "any person unable to maintain himself, or any family unable to maintain itself, shall be provided for or assisted."

No other word perhaps in the language more appropriately describes the persons here designated than the word "indigent." It means the needy, the poor, those who are destitute of property and the means of comfortable subsistence.

It was this very class of persons—a class greatly increased by the calamities of war—the city council was required to provide for or assist. When, therefore, to accomplish that object the council negotiated a loan by sale of its bonds, it exercised a power plainly conferred by its charter and by the general laws of the land.

It has been said, however, that this was not the sole purpose in negotiating the loan; that the object was to provide for the families of soldiers and others not contemplated by the statute, and the fund was in fact expended in the purchase of supplies for a city store, from which these supplies were sold or given away, as occasion required. There is, however, not a scintilla of evidence in the record to show that the plaintiff had any notice of the purpose of the city council in issuing and selling the bonds beyond what is furnished by the bonds themselves, or that she had any information touching the subsequent disposition of the money realized from the sale. The bonds on their face declared that they were issued pursuant to an " ordinance authorizing the issue of bonds for the maintenance and support of the poor and for other purposes."

This court held in *DeVoss* v. *City of Richmond*, 18 Gratt. 338, that the *bona fide* holder of a bond issued to him, standing in the position of a holder of a negotiable security, is not bound to look behind the bond itself. And this is unquestionably the result of the authorities generally. If it is to be held that the purchaser in this case was bound to go further and inquire " what were these other purposes," the proper source of information was the ordinance itself, to ascertain whether there was any illegality or irregularity

in the transaction. Upon looking at the ordinance he would there find it provided that the proceeds should be paid into the treasury of the city, "subject to the order of the council for the use and benefit of indigent families and citizens."

Was it the duty of the purchaser to go further and see how the money was to be expended? Can it be that he is to be held responsible for a subsequent misapplication of the proceeds of sale? Persons dealing in municipal securities of a negotiable character are not required to make such inquiries. If the loan is one authorized by the charter the purchaser of the bond cannot be held responsible for any subsequent misapplication or misappropriation of the proceeds of the loan. "When the act in question," says the authorities, "is one which the corporation is not authorized to perform under any circumstances, the defence is available to the corporation against all persons, because they are bound to know from the law of its existence that it has no power to perform the act; but where the act is authorized for some purposes and not for others, the defence may or may not be available, depending on the question whether the party dealing with the corporation is aware of the intention to perform the act for an unauthorized purpose, or under circumstances not justifying its performance." The case of *Hackct* v. *Ottowa*, decided by the supreme court of the United States, reported in 9th Otto U. S. R. 86, is direct authority upon the question involved here.

It was there held that if a city issues bonds in accordance with its charter, which empowers the council to borrow money generally, and to issue bonds therefor, and the bonds recite upon the face that they are issued in accordance with certain ordinances of the city, the titles of which being quoted in the bonds, characterize the ordinances as providing for the loan for municipal purposes, the city is estopped in a suit upon the bonds by an innocent purchaser for value,.

to set up that the ordinances appropriated the money to other purposes, and the bonds were therefore void. Mr. Justice Harlan, in delivering the unanimous opinion of the court, said: "The city charter conferred upon the council the power to borrow money, and to issue bonds therefor. No limitation is prescribed as to the amount which might be borrowed, nor any express restriction imposed as to the object or purposes for which bonds may be needed. It was clear, therefore, that the council, having secured the consent of the requisite majority of voters, might rightfully borrow money upon bonds of the city for every purpose which could be fairly deemed municipal or corporate. And the bonds having recited on their face that they were issued for a loan for municipal purposes, the city was estopped by its own representatives, to say, as against a *bona fide* holder of the bonds, that they were not used for municipal or corporate purposes." He further said: "It would be the grossest injustice and in conflict with all the past utterances of this court, to permit the city, having power under some circumstances to issue negotiable securities, to escape liability upon the ground of the falsity of its own representations made through official agents and under its corporate seal, as to the purposes with which these bonds were issued." I have quoted thus largely the observations of the learned judge, because they have a direct bearing on the present subject of controversy. There are numerous authorities to the same effect. Among them *The Eastern Connection Railroad* v. *Haches*, 35 Eng. Law and Eq. R. 31.

In the case before us the purchaser had not only the bonds themselves and the ordinance of the city council to rely upon, but also its representations made by its agents at the sale, that the bonds were equally valid with any former issue of the city; and under the influence of these representatives they commanded as large a price as any of the old bonds. Those now in controversy were purchased

by J. F. Slaughter, and were payable to him, or bearer. They were subsequently changed and made payable to bearer exclusively, under another ordinance of the city. In this condition they were transferred by him to the plaintiff for value. There is no reason, certainly there is none in the record, to attribute to either want of good faith in the transaction, or any notice, actual or constructive, of any infirmity in the bonds, or any misapplication of the proceeds even, if it be conceded that such infirmity in fact existed, or such misapplication had occurred. I think, therefore, the circuit court rightfully refused the fourth instruction.

Holding these views, I have not deemed it necessary to consider one other ground upon which the validity of these bonds is maintained; and that is, the money was borrowed to purchase supplies not only for the poor but to save the city of Lynchburg from the calamity of continued bread riots which threatened the peace of the city and the lives and property of its citizens. Without going into that question, the decision of the circuit court may be safely placed upon the grounds already discussed.

We come next to the fifth and last instruction. That instruction declares that if the jury believe from the evidence the bonds were issued and sold for the purpose of raising money to be employed directly or indirectly in aid of the rebellion against the government of the United States, and that this purpose was known to the plaintiff at the time that she became the owner of the bonds and coupons thereto attached, she is not entitled to recover in this action.

It is very clear from the evidence, that the bonds in question were not issued for these purposes, and their proceeds were not intended so to be applied. Although it is possible that the supplies purchased with this fund thus obtained were furnished to the families of soldiers in com-

mon with other destitute persons in the city, there is some evidence, however, in the record tending to show that one of the objects of the city council in negotiating the loan was to contribute indirectly to the prosecution of the war. This evidence is, however, very slight, consisting as it does of the statements of one or two witnesses, that they understood that the bonds were sold for war purposes; still it might be contended that according to our rules of practice, it is the duty of the court to give the instruction where there is some evidence, however slight, leaving it to the jury to pass upon the weight of the testimony.

The instruction, however, asserts another proposition equally important, and that is, that the plaintiff must have had notice of the illegal purpose. This the defendant was bound to concede; for the bonds and coupons being negotiable, stand upon the same ground and are entitled to all the immunities accorded to negotiable securities in the commercial world.

Such securities made by parties competent to contract, in the hands of a *bona fide* holder, cannot be affected by any secret defect or infirmity unless indeed where some statute has declared the act illegal and all contracts founded thereon utterly void. Where, however, the bond or other security is founded upon a transaction simply against public policy, good morals, or public right, it is notwithstanding valid in the hands of a *bona fide* holder for valuable consideration without notice of the infirmity. Story on Promissory Notes, 189, 190, 191, 198, cases cited in note.

I have already stated that the record does not contain a scintilla of evidence either tending to show that the plaintiff or J. F. Slaughter, from whom she purchased, had any notice whatever of any infirmity in the bonds, or any information touching the expenditure of the money, or the objects to which it was applied.

The court therefore could not give an instruction based

upon a supposed state of facts of which there was no proof whatever. As has been well said, to give an instruction where there is no evidence to sustain it, is but an instruction to the jury to find a fact. *Commissioners* v. *Clark*, 4 Otto U. S. R. 278; *Rhett* v. *Poe*, 2 How. U. S. R. 457, 483. But there is still another and more fatal objection to the instruction.

The bonds which are the subject of this controversy, as already stated, were originally purchased by John F. Slaughter at the sale made in 1864. The plaintiff purchased from him between November, 1865, and October, 1866. If John F. Slaughter had no notice of the illegal purposes for which the bonds were issued and sold, it is a matter of no concern whether the plaintiff had or had not such notice.

A party with notice may buy from one without notice, and will be protected. The object of this rule is to protect the *bona fide* holder, and to enable him to transfer it to others with the same immunity which attaches in his own hands.

Upon this point see First Daniel on Negotiable Instruments, Ill. 803; *Commissioners* v. *Clark*, 4 Otto U. S. R. 278; *Cromwell* v. *Sac County*, 6 Otto U. S. R. 51. The instructions now being considered ignores this important element, and it assumes that the bonds are invalid if the plaintiff had notice of the alleged illegality, whether the person from whom the purchaser bought was or was not a *bona fide* purchaser for valuable consideration.

If, therefore, the court had given the instruction, it would have been palpable error. Certainly there was no error in refusing it. For these reasons I am of the opinion that the judgment of the circuit court is plainly right, and must be affirmed.

JUDGMENT AFFIRMED.