Argued March 2, decided April 9, 1912.

## KIERNAN v. CITY OF PORTLAND.

[122 Pac. 764.]

EVIDENCE—JUDICIAL NOTICE—PREVIOUS DECISION.

1. Where the regularity of proceedings leading to the adoption of a section of a city charter has already been passed on in a former action between the same parties, the Supreme Court will take judicial notice of the former opinion, and refuse to re-examine the question in a subsequent action, although the former judgment is not pleaded as a bar.

MUNICIPAL CORPORATIONS—BONDS—RATE OF INTEREST.
2. Portland City Charter, § 118½, authorizing the issuance of municipal bonds bearing 4 per cent interest, and directing their sale to the highest bidder, with the privilege to the city council of rejecting unsatisfactory bids, authorizes the acceptance of the highest bid, although it should be below par, and should thus make the interest, in effect, greater than 4 per cent; the provision in regard to interest merely referring to the form of the bonds.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

This is a suit by Frank Kiernan against the city of Portland, a municipal corporation, Joseph Simon, Mayor, A. L. Barbur, Auditor, and Ladd & Tilton Bank, a corporation. From a decree in favor of defendants plaintiff appeals.                          AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Ralph R. Duniway.*

For respondent there was a brief over the names of *Mr. Frank S. Grant,* City Attorney, and *Mr. W. C. Benbow,* Deputy City Attorney, with an oral argument by *Mr. Grant.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

With the exception hereafter noted, every substantial element in the complaint in this case was considered, passed upon, and settled in *Kiernan* v. *Portland,* 57 Or. 454 (111 Pac. 379: 112 Pac. 402), and in view of those decisons no substantial right of plaintiff was affected by the refusal of the court to again consider questions which already had been passed upon.

1. In matters of the character of the present litigation, where the rights of the whole public are concerned, this court, in any event, would have taken judicial notice of its opinion in the former case and declined to re-examine matters concerning the regularity of the proceedings leading to the adoption of section 118½ of the city charter of Portland. *Irving Real Estate Co.* v. *Portland,* 56 Or. 140 (107 Pac. 955). Had the circuit court over-

ruled the demurrer and required the defendant to plead our former judgment as *res adjudicata* as to that part of the complaint, it is plain that plaintiff would have been defeated inevitably; and therefore he has not been injured in any substantial right by any irregular action of the circuit court, so far as concerns that feature of the present suit.

2. This case, however, presents a new feature of public interest which we shall now proceed to consider. Concisely stated, the question is this: Can the city, when, as in this case, the charter prescribes the rate of interest to be paid, sell its bonds below par?

It is alleged that the city has sold to defendants Ladd & Tilton $250,000 of such bonds for the price of 93,08 cents on the dollar, thereby raising the actual interest paid on the bonds to over 4½ per cent, instead of 4 per cent as prescribed in the charter and the court is asked, either to compel the parties to rescind their contract, or to require Ladd & Tilton to pay such additional sum as will bring the price of the bonds up to par.

Counsel for appellant contends that a sale of the bonds at the price above indicated practically increases the rate of interest on the money received from the sale to 4½ per cent, and that, section 118½ being the measure of power of the city to borrow for the purpose indicated, it cannot, by a sale of bonds at the depreciated value, indirectly pay a greater rate of interest than 4 per cent. While the contention is plausible, we cannot adopt it as sound. The provision as to the amount of bonds to be issued, their denomination, and the rate of interest they shall bear has reference only to the form of the bonds and the method in which they shall be executed, in order to prepare them for sale. The provision following directs that they shall be "advertised and sold to the highest responsible bidder," with the privilege reserved to the council to reject any and all bids that are not satisfactory.

It seems more reasonable to infer from the language here employed that it was the intent of the lawmaking power to grant to the council the entire discretion to sell at the best advantage possible under the circumstances. The weight of authority is to the effect that the sale of municipal bonds below par is not illegal, unless the act or ordinance authorizing the issue expressly directs that they shall not be sold for less than par.

"That the bonds of a municipal corporation may be sold by it for less than par must be regarded as the general understanding of lawmakers of the states, as well as the officers of the municipalities, because, when it is desired to prevent such sale, that fact is incorporated in the enabling act or in the ordinance or resolution providing for the issue of the bonds." Simonton, Municipal Bonds, § 146.

See, also *Yesler* v. *Seattle,* 1 Wash. 308 (25 Pac. 1014) ; *City of Lynchburg* v. *Slaughter,* 75 Va. 57; *City of Memphis* v. *Bethel* (Tenn.) 17 S. W. 191; *City of Austin* v. *Nalle,* 85 Tex. 520 (22 S. W. 668, 960).

The cases cited by appellant are not in conflict with the views above announced. The first of these is the *City of Atchison* v. *Butcher,* 3 Kan. 104, in which it appears that the city was authorized to subscribe $100,000 to the stock of a proposed railroad, and to issue bonds to that amount to pay for the stock, or to borrow the money upon bonds for the purpose of paying its subscription. It did neither of these things, but issued bonds for $100,000, and bartered them to the railroad company for $70,000 worth of stock at par. The court held that the city officers exceeded their authority, and that the true intent of the charter was that the railroad company was to exchange the stock at par for bonds at par. There was no authority given to sell the bonds to the highest bidder, and no authority in fact to sell them for any purpose.

In *Sherlock* v. *Village of Winnetka,* 68 Ill. 530, the

board of education issued bonds bearing 10 per cent interest and sold them, after 10 months interest had accrued, at a discount, which, in the view of the court, amounted to paying a usurious rate of interest. The court soundly scolded the directors for abusing their power, but refused to declare the bonds void. The question of usurious interest cannot arise in the case at bar, and it is doubtful, in view of the authorities, whether a municipal bond issued for the purpose of sale, no matter what interest is paid, can be attacked for usury.

In *Daviess County* v. *Howard*, 76 Ky. 101, the county court was authorized to subscribe for $250,000 of the stock of a railroad company "and issue bonds of said county for the amount of stock subscribed or any part thereof." The county subscribed for $250,000 of the stock and issued bonds for $317,350 to pay for it. The court held that the true intent of the act was to authorize the county to issue bonds equal in face value to the amount of stock subscribed, and that the issue of $67,350 of bonds over and above the par value of the stock was void.

The contention of appellant is not borne out by the authorities cited, and, as before observed, the power granted to sell the bonds to the highest bidder necessarily implies the right of the council to accept the highest bid, even though it should be below par.

It is unfortunate that the city should be compelled to accept bids below par for these excellent securities; and no doubt, the fact that this condition exists is due in a great measure to the perverse and useless litigation instituted and carried on by appellant after it had become apparent to everbody that its only effect would be to depreciate the value of the city's securities, and to increase, by a large amount, the bond issue necessary to complete the contemplated improvement.

The decree of the circuit court is affirmed.

AFFIRMED.