[No. 15605.　*En Banc.*　November 29, 1919.]

R. W. HILL, *Appellant,* v. THE CITY OF SEATTLE, *Respondent.*[1]

MUNICIPAL CORPORATIONS (525)—PUBLIC UTILITIES—BONDS—SALE AT DISCOUNT—POWERS OF CITY—STATUTES. Under Rem. Code, § 8008, authorizing a city to issue and sell bonds bearing interest not exceeding six per cent per annum, special fund utility bonds calling for five per cent interest semi-annually may be sold by the city at a discount that would yield six per cent interest, in the absence of any statute prohibiting sales at less than par.

SAME (525). Such sales at less than par are not prohibited by the latter part of such section, which provides that the contract for the improvement may provide for payment only in bonds and warrants at par.

SAME (525). Sales of five per cent below par so as to net six per cent per annum does not violate Rem. Code, §.8008, providing that the rate of interest shall not exceed six per cent per annum payable semi-annually.

[1]Reported in 185 Pac. 631.

SAME (525).   The objection to such a sale that the discount is payable in a lump sum, and violates the statute requiring semi-annual payments, is technical and goes largely to the form of the bonds.

MACKINTOSH, J., dissents.

Appeal from a judgment of the superior court for King county, Smith, J., entered October 4, 1919, upon sustaining a demurrer to the complaint, dismissing an action for an injunction, tried to the court.   Affirmed.

*Donworth, Todd & Higgins* (*Hyman Zettler*, of counsel), for appellant.

*Walter F. Meier* and *Robert H. Evans*, for respondent.

*Preston, Thorgrimson & Turner, amici curiae.*

*The Attorney General*, and *Frank P. Christensen* and *R. M. Burgunder, Assistants, amici curiae.*

MITCHELL, J. —This is a taxpayer's suit to enjoin the city of Seattle from the consummation of the sale of public utility bonds.   Two proposed bond issues are involved; one, according to ordinance No. 39,492, in the sum of $790,000, to provide for making additions and betterments to the city's street railway system, and the other, according to ordinance No. 39,667, in the sum of $1,250,000, for making additions and betterments to the light and power plant belonging to the city.   Each ordinance provides that the bonds to which it relates shall be issued and sold, and bear interest not exceeding six per cent per annum, payable semi-annually, and that the bonds and interest shall be payable only out of a special fund created from the gross revenues of the public utility.   The bonds prepared under the two ordinances are written so as to bear interest at five per cent per annum, payable semi-annually. Carstens & Earles, Incorporated, and John E.

Price & Company, have offered to buy all the bonds thus prepared at a price "equal to six per cent (6%) basis for each one thousand dollar bond, plus accrued interest to date of delivery. Said basis to be figured in accordance with the formula prepared by the state bureau of accountancy." The city council passed a resolution accepting the bid, and thereupon this action was commenced against the city, complaining separately against the sale of the bond issues. To each cause of action a general demurrer was interposed and sustained. Plaintiff, electing to plead no further, has appealed from the judgment dismissing the actions.

The only question presented is whether the city can sell its special fund utility bonds below par where the rate of interest will not exceed six per cent per annum, under a controlling statute which provides the city may "issue and sell bonds bearing interest not exceeding six per cent per annum, payable semi-annually."

The general rule as announced by the cases and text writers is well stated in the case of *Kiernan v. City of Portland,* 61 Ore. 398, 122 Pac. 764, as follows:

"The weight of authority is to the effect that the sale of municipal bonds below par is not illegal, unless the act or ordinance authorizing the issue expressly directs that they shall not be sold for less than par. 'That the bonds of a municipal corporation may be sold by it for less than par must be regarded as the general understanding of lawmakers of the states, as well as the officers of the municipalities, because, when it is desired to prevent such sale, that fact is incorporated in the enabling act or in the ordinance or resolution providing for the issue of the bonds.' Simonton, Municipal Bonds, § 146. See, also *Yesler v. Seattle,* 1 Wash. 308 (25 Pac. 1014); *City of Lynchburg v. Slaughter,* 75 Va. 57; *City of Memphis v. Bethel* (Tenn.), 17 S. W. 191; *City of Austin v. Nalle,* 85 Tex. 520 (22 S. W. 668, 960)."

The rule as announced in that case was quoted with approval and adopted by this court in *Paine v. Port of Seattle,* 70 Wash. 294, 126 Pac. 628, 127 Pac. 580; and in the case of *Uhler v. Olympia,* 87 Wash. 1, 151 Pac. 117, 152 Pac. 998, it was said:

"In the absence of a controlling statute, it has been generally held that a municipality can sell its bonds below par, and that a sale at par allowing a commission for the sale does not affect the validity of the bonds."

Therefore, under the rule, it is advisable to consider the ordinance, the statute, and some of the cases of this court in this respect. Neither of the ordinances in question provides that the bonds shall not be sold at less than par. The first session of the legislature of this state enacted a law (Laws of 1889-1890, pp. 520-522) authorizing cities and towns to construct certain kinds of internal improvements, including waterworks and sewer systems, and issue bonds in payment therefor, creating a general indebtedness against the city therefor. Section 3 of the act provided the bonds should bear interest not exceeding six per cent per annum, payable semiannually. Under that law, the city of Seattle proceeded to acquire and construct a water system and a sewer system. The necessary ordinance was passed and adopted by a popular vote. The ordinance fixed the rate of interest on the bonds at five per cent per annum, and provided they should be disposed of at not less than par, although the statute was silent as to whether or not they might be sold for less than par. The bonds were offered, but no bids were received. Later, a private offer was made to buy the bonds if it were arranged that the rate of interest should be five and one-third per cent per annum on the money actually paid in the purchase of the bonds at a discount, the result of which would be

that the city at the end of the maturity of the bonds (twenty years), would have paid $62,000 in addition to the specified five per cent interest. The city passed an ordinance accepting the proposition and was proposing to dispose of the bonds. The case of *Yesler v. Seattle,* 1 Wash. 308, 25 Pac. 1014, was instituted to prevent the sale, one of the principal contentions and objections being that the proposed sale contemplated disposing of the bonds at less than par. This court, however, sustained the transaction, holding that, without again submitting the matter to the voters, the city council might, by ordinance, provide that the bonds be sold at a discount, and bear a greater rate of interest than that nominated in the bonds, provided the same did not exceed six per cent per annum, payable semi-annually, upon the amount of money received; basing the decision upon the general rule and the broad language contained in § 6 of the act, viz.: "such bonds shall be sold in such manner as the corporate authorities shall deem for the best interest of the city or town."

The legislature of 1897, chap. 112, page 326, also the session of 1909, chap, 150, page 580, departing from the prior authorized plan by which the cost of internal municipal improvements should be a general charge against the municipality, authorized cities and towns, in the alternative, to make the cost of the same a charge against only a special fund created from the revenues or proceeds to be derived from the utility or system. In the present instance the city of Seattle is pursuing this new or alternative plan, and finds its primary authority in §§ 8005, 8006, 8007 and 8008, Rem. Code. Immediately, we are concerned with portions of § 8008. This section authorizes the sale of bonds and warrants "bearing interest not exceeding six per centum per annum, payable semi-annually,"

and also provides that: "Said bonds and warrants shall be sold in such manner as the corporate authorities shall deem for the best interests of the city or town, and the corporate authorities may provide in any contract for the construction and acquirement of the proposed improvement that payment therefor shall be made only in such bonds and warrants at par value thereof." The statute contains no direct prohibition against the sale of bonds at less than par, but it is urged that the latter part of the above quoted portion of § 8008, by implication at least, negatives any authority for the sale of bonds at less than par. Clearly, such is not the case; for the limitation placed upon the broad power to sell as the corporate authorities shall deem for the best interests of the city is confined to contracts for the construction and acquirement of the proposed improvement. Here the city is not dealing with a contract to construct or acquire the proposed improvement, but with the sale of bonds to produce cash so that the city may enter into a contract or contracts for the construction and acquirement of the proposed improvements.

In the whole of the establishment and construction of a public utility, it often becomes necessary to go beyond the reach of contracts and acquire property by proceedings in eminent domain, in which case, while the property owner might be compelled to accept a warrant of the municipal corporation in pay for his property, if there was sufficient money in the fund on which it was drawn with which to pay it, certainly he could not be compelled to take a municipal bond for his compensation. He is entitled to cash or its exact equivalent. A statute which either does or does not prohibit the sale of bonds at less than par, while not without its influence, does not fix the value of the

bonds. Values are fixed by the market; they are the result of bargain and sale. So that the limitation referred to is restricted and confined. Beyond its sphere it does no violence to the general rule concerning the sale of bonds at less than par, but must be taken as an exception to it, and, by a familiar rule of construction, proves the existence of that from which it is excepted. The words of the limitation, considering the connection in which they are used, besides binding the city authorities if they follow the plan of paying the contractor in bonds or warrants, are designed to advise competitive bidders for the contract with certainty of the manner in which their services and material must be exchanged for such bonds or warrants.

Counsel for appellant, and the *Attorney General* of the state and his associates, argue that the general rule laid down in *Yesler v. Seattle, supra,* and *Paine v. Port of Seattle, supra,* has been modified, if not overruled, in the later cases of *Uhler v. Olympia, supra,* and *Spear v. Bremerton,* 90 Wash. 507, 156 Pac. 825. We are satisfied such is not the case. Similar propositions were involved in the two latter cases which were entirely different from those in the two first cases, which were similar to the present case.

In the case of *Uhler v. Olympia,* the bonds to be sold were to bear interest at the rate of six per centum per annum, so that any sale below par would necessarily result in a violation of the statute which made six per centum per annum the maximum rate of interest. In that case it was said that the question of importance was whether the council could legally pay the sum of $4,500 to the purchasers of the bonds as a commission to cover "the cost of the preparation of the bonds and the legal expenses." The question was resolved in the negative. In doing so, upon referring

to the statutory maximum interest rate of six per cent per annum, it was said:

"This limitation on the power of the council is just as prohibitive, and if disobeyed would result in the same evil, as if the statute had provided that the bonds should not be sold for less than par. In either case the object of the law is to prevent speculation in municipal securities, and to insure to those who must ultimately pay the bonds, a dollar in lawful currency for every dollar of obligations issued. Any device to defeat these purposes, when declared by statute, has been invariably frowned upon."

Under the language just quoted, it is to be noticed that it is not stated bonds may not be sold for less than par, but only that disobedience of the provision relating to the maximum rate of interest would result in the same evil "as if the statute provided that the bonds should not be sold for less than par." Again in the case, the same thing, in effect, is stated as follows:

"There is another reason for holding the transaction illegal. It is usurious. A statute fixing a maximum rate of interest may not be evaded at will by any device or contrivance which will insure a greater return of interest than the law allows."

This is a rule which is not only sound, but which has no application in such a case as the one at bar, where, by the sale of the bonds as proposed, the city will not pay interest on the money it receives in excess of the maximum rate allowed by law.

The case of *Spear v. Bremerton,* as already stated, was similar to the *Uhler* case. It was one in which the city of Bremerton had made a contract for the sale of bonds to purchase a waterworks system, whereby the purchaser of the bonds agreed to attend to all proceedings necessary in the issuance of the bonds and take them at a discount of five per cent, which

would amount to the sum of $11,250 on the whole issue, said discount to cover all commissions, attorney's fees and the purchase and sale of bonds; said bonds to draw six per cent. The case was very properly disposed of, taking the same course as did the *Uhler* case. Counsel refer to, and with considerable insistence rely upon, certain language employed in the case, as follows:

(a) "This is clearly an evasion of the law. We had occasion to say, in *Uhler v. Olympia, supra,* that the taxpayer could not be put to the burden of paying a purchaser of the bonds anything in the way of commission or bonus or for attorney's fees and expenses of printing, etc. The duty of the city and the privileges of the buyer are there set out, and we shall not restate them. It may be understood that the law will no longer tolerate the exploitation of the public in the way of taking payment for something for which the taxpayer gets no valuable consideration. The bond, when issued in conformity with existing laws, is a commodity or commercial paper, to be bought at its price or to be let alone."

Manifestly the proposition of taking payment for something for which the taxpayer gets no valuable consideration is wholly foreign to a case like the present one in which the city receives money, not services in connection with the preparation and disposition of the bonds, at a rate of interest not in excess of that allowed by law; while but a moment's glance at the other proposition—"The bond, when issued in conformity with existing laws, is a commodity or commercial paper, to be bought at its price or to be let alone"—will discover it is vastly different from declaring that the bond is a commodity or commercial paper to be bought at its par value or to be let alone.

(b) "The statute does not assume to fix a maximum rate of interest and permit the issuance of the

bonds at a lesser rate, leaving the difference as a zone for exploitation out of which a city council can give the buyer or broker his commissions, attorney's fees and other expenses.''

This declaration can have no application to such a case as the one at bar; for here there are no broker's commissions, fees or other expenses to be taken care of in a zone created by the difference between the statutory maximum rate of interest and the lesser rate fixed in the bonds. It is essential to a full appreciation of the proper effect of any decision of a court to keep in mind the facts of the case under consideration therein. The facts in the *Uhler* and *Spear* cases were unlike the facts in the present case. In fact, in the *Uhler* case it was specifically stated:

''It is contended by counsel for the city that this is a valid exercise of power under *Yesler v. Seattle*, 1 Wash. 308, 25 Pac. 1014, and *Paine v. Port of Seattle*, 70 Wash. 294, 126 Pac. 628, 127 Pac. 580. We find nothing in these cases that touch the question at bar.''

Here we have a case of an outright sale. The purchaser agrees to buy, and the city agrees to sell, at a price not prohibited by positive law, and where the interest upon the money actually received by the city is not in excess of the rate permitted by the statute. No fraud whatever, legal or otherwise, is alleged against the city or its councilmen, nor against the bond buyers. Concerning the form of the bonds, as compared to the terms of the sale actually agreed upon, we think it not controlling, but that it presents a situation similar in principle to that in the case of *Paine v. Port of Seattle, supra,* where bonds were sold at less than par so as to carry a rate of interest on the money actually received higher than that fixed in the bonds, of which it was said:

"Assuming that the rate of interest stated in the original resolution upon which the election was held is binding upon the commissioners, so far as the form of the bond is concerned, we think it in any event goes no further than this, since there was nothing therein relating to the price at which the bonds should be disposed of and there is nothing in the port district law to that effect."

In the case of *State ex rel. Grant Smith & Co. v. Seattle,* 74 Wash. 438, 133 Pac. 1005, the question submitted was whether the contractors should be charged with the interest accrued upon local improvement bonds from their date to the time of their respective delivery. The question was answered in the affirmative. In the opinion, after giving the substance of the statute, as follows:

"Section 8020, Rem. & Bal. Code, provides that local improvement bonds may be issued to contractors in payment for their work, or that the bonds may be sold at not less than their par value and accrued interest, and the proceeds thereof applied in payment of the amount due the contractor,"

it was said:

"If, under this section, the contractor takes the bonds in payment for his work, we think the only reasonable construction to be placed upon it is that he shall, as is the case when the bonds are sold to third parties, accept them at not less than par and accrued interest. It was not contemplated by the statute that there would be any difference in the amount paid the contractor whether he accepts bonds in payment for his work, or whether bonds were sold to others and the contractor paid in cash."

By analogy, it is argued that thereby this court held contrary to the rule in the cases of *Yesler v. Seattle* and *Paine v. Port of Seattle.* The argument is plausible but not sound. Where the statute provides that local improvement bonds shall not be sold

at less than par and accrued interest, for cash, it means the statute fixes the minimum price at which the bonds may be disposed of, irrespective of market conditions, and that a contractor who takes his pay in such bonds must reckon according to that statutory price. Indeed, in the *Grant Smith & Co.* case, it was said:

"It is not questioned, as we understand the position of respective counsel, but that the contractors, in accepting these bonds in payment for the work, were to receive them at their face or par value."

So that the question was one of the application of the law to the contract in question, and the court held the contractor chargeable with accrued interest.

The point is made by appellant that the proposed sale violates the statute, in that it provides for interest at the rate of six per cent per annum, while the statute provides the interest shall be paid semiannually. The statute states that the interest shall not exceed six per cent per annum, and certainly interest at a given rate, payable annually, is less favorable to an investor than if payments at that rate are made semiannually.

Lastly, appellant, treating the discount as interest, argues that it violates the statute requiring semiannual interest payments, and that the so-called discount interest would be paid in a lump sum, either at the time of completing the sale or at maturity of the bonds. This contention, we think, is technical and goes largely to the form of the bonds as compared with the terms of the actual transaction, which, as we have heretofore noticed, is not controlling.

Specifically, upon this very subject, the court in the case of *Kiernan v. City of Portland, supra,* well said:

"The provision as to the amount of bonds to be issued, their denomination, and the rate of interest

they shall bear has reference only to the form of the bonds and the method in which they shall be executed, in order to prepare them for sale.''

It is clear and evident that the purchaser is not to receive, nor is the city to pay, over six per cent interest on the semiannual basis; for that is the express provision of the bid.

There was no error in the judgment of the trial court and it is affirmed.

HOLCOMB, C. J., MAIN, TOLMAN, PARKER, BRIDGES, and MOUNT, JJ., concur.

MACKINTOSH, J. (dissenting)—The statute provides ''that the city may issue and sell bonds bearing *interest* not exceeding six per cent per annum, payable semiannually.'' For two reasons, the arrangement sanctioned by the majority of the court in this case violates the foregoing provision of the statute. In the first place, the scheme adopted is not the issuance of bonds bearing interest at the rate of six per cent. The bonds bear the interest rate of five per cent, which is expressly provided for in the bonds, with a reduction below the par value as a discount, and its character is not changed by calling it interest, for it is not interest. The second reason is that the statute expressly calls for interest payments semiannually, and, adopting the majority view that the discount is, in effect, interest, makes the interest payable not according to the statute, five per cent interest being payable semiannually, and the balance in a lump sum; that is, it is paid at the time the deduction from the face value of the bonds is made.

This court, in *Spear v. Bremerton,* 90 Wash. 507, 156 Pac. 825, frowned on a similar subterfuge, but we now seem to have smiled again at the present exhibition of high financing. The case of *Uhler v. Olympia,* 87

Wash. 1, 151 Pac. 117, 152 Pac. 998, in effect, over-ruled the case of *Yesler v. Seattle,* 1 Wash. 308, 25 Pac. 1014, but we now seem to have revived that case and made it the basis for the present decision. It would seem that express constitutional and statutory provisions regulating the creation of a municipal indebtedness should receive some consideration in determining the validity of the methods adopted in the issuance of municipal obligations, but the decision in this case and others involving similar questions would indicate that the industry of creating public indebtedness is to be fostered at the expense of clear and explicit provisions of the law. When this industry has developed to such an extent that the taxpayer is no longer able to bear the burden, the courts will probably revert to fundamental principles and hold that constitutions and statutes are to be followed in the creation of municipal bonded indebtedness; but until such time, there seems to be no hope that such provisions will be given the consideration accorded them when considering transactions between private individuals.

It might be suggested that the proper way to issue six per cent bonds would be to issue them directly, and not to attempt by artifice to issue them by calling them five per cent bonds.

For the two foregoing reasons stated, I cannot agree with the opinion of the court.