Argued March 30, reversed and suit dismissed April 19, 1927.

A. J. RICHARDS ET AL. *v.* CITY OF PORTLAND

ET AL.

(255 Pac. 326.)

**Municipal Corporations—Municipality can Act Only Under Express or Implied Authority Conferred.**

1. Municipality, acting either in governmental or proprietary capacity, can do so only by virtue of express or implied authority conferred on it.

**Municipal Corporations — Charter Held Grant not Limitation of Power.**

2. Charter of City of Portland is grant and not limitation of power.

**Municipal Corporations—City must Show Authority to Supply Water as Public Utility Beyond Boundaries.**

3. To warrant City of Portland in supplying water as public utility beyond boundaries, it must show clearly expressed legislative authority; and power to supply inhabitants is not sufficient, since ordinarily city's jurisdiction ceases at boundaries.

———

1. See 19 R. C. L. 768.
3. See 19 R. C. L. 790. °

**Municipal Corporations—City of Portland Held Unauthorized to Supply Water as Public Utility Outside Boundaries (Charter 1903, §§ 76, 226, 234; Charter 1913, §§ 151, 153; Or. L., §§ 3768, 3770).**

4. City of Portland *held* not authorized to supply water as public utility outside boundaries, in view of Charter of 1903, Section 76, Charter of 1913, Sections 151, 153, and Sections 3768, 3770, Or. L., notwithstanding Charter of 1903, Sections 226, 234, though it could sell surplus water to persons outside, subject to superior rights of inhabitants.

**Municipal Corporations—Doubt as to Municipality's Power Should be Resolved Against Grant.**

5. Where it is doubtful whether certain power has been conferred on municipality, such doubt should be resolved against the grant.

**Waters and Watercourses—City Supplying Water to Outside Districts must Serve All Consumers Without Discrimination.**

6. Where city supplying water to outside districts is engaged as public utility, it is required to serve all consumers therein without discrimination, since under such circumstances law imposes same obligations on it as it would on private corporation.

**Waters and Watercourses—City's Regulations Requiring Storage Reservoirs as Condition to Furnishing Water to Consumers Without City cannot be Enjoined by Users Affected.**

7. Injunction will not lie to restrain enforcement of regulations by municipality requiring as condition for furnishing water to consumers beyond city limits the construction of storage reservoirs to relieve the danger of shortage in times of unusual consumption.

---

Municipal Corporations, 28 Cyc., p. 258, n. 38, p. 266, n. 15, p. 269, n. 47, p. 274, n. 7.
Public Utility, 32 Cyc., p. 1255, n. 52 New.
Waters, 40 Cyc., p. 768, n. 30, p. 769, n. 33.

From Multnomah: ASHBY C. DICKSON, Judge.

Department 2.

REVERSED AND SUIT DISMISSED.

For appellant there was a brief and oral arguments by *Mr. Frank S. Grant,* City Attorney, and *Mr. Lyman E. Latourette,* Deputy City Attorney.

---

5.   See 19 R. C. L. 769.

For respondents there was a brief and oral arguments by *Mr. Henry L. Lyons* and *Mr. William L. Brewster.*

BELT, J.—This is a suit to enjoin the City of Portland from discontinuing water service to plaintiffs and others similarly situated who reside outside of the corporate limits of the defendant municipality but contiguous to it. It is estimated there are between 800 and 1,200 people residing in the district in question. When this suburban tract was first platted it was practically uninhabited, but, as it developed, the city supplied water from its large mains adjacent thereto to various consumers. This was done upon their written application, which bore an indorsement on the back thereof that the city had a prior right to use of water. As the district grew in population it became burdensome for the city to deal with individual water consumers and, in 1914, a new policy was adopted by requiring the organization of water companies by those interested, through which the service was continued under written contract for a two-year period. Under the new policy the city dealt directly with the water companies and charged them for water supplied as shown by master meter. Each company made its own regulations and collected from the individual water consumers. The city, in these outside districts, had nothing to do with the construction, maintenance or ownership of the pipes leading to the mains. The contracts with the water companies were, in many instances, renewed at the expiration of the two-year period and in all of them was the reservation that the water supplied was "subject to the prior and superior rights of the citizens of said city to the water."

During recent years, in July and August, the city has not had a sufficient supply of water when the system was at its peak-load. Ordinarily, the city would use on an average of 37,000,000 gallons daily, but, during extremely hot weather, 104,000,000 would be required, which would result in a serious water shortage for consumers in the city and elsewhere. To remedy the situation, an ordinance was enacted March 12, 1924, prescribing that "any such distributing agency (water company) that has more than twenty-five consumers, shall provide storage facilities for not less than three days' maximum consumption." The object of the city in requiring storage tanks was, as explained by L. S. Kaiser, Superintendent of the Bureau of Water Works: "mainly to carry us over peak-loads when there is a shortage of water in a district and the using heavy on the mains. Water can accumulate in these tanks at night to give them a start in the morning."

All of the 48 or 50 water companies supplying these suburban districts, with the exception of those made defendants herein, complied with the above ordinance and constructed storage tanks. The contracts with defendant companies have expired and the city refuses to renew them unless there is a compliance with the ordinance providing for storage facilities. Upon refusal of the defendant water corporations to provide storage tanks, the city on September 2, 1925, enacted an ordinance authorizing and directing the Superintendent of the Bureau of Water Works after due notice to discontinue water service to defendant companies, unless "storage facilities for not less than three days' maximum consumption" had been provided on or before December 1, 1925. Whereupon plaintiffs instituted this suit. The water corpora-

tions were made defendants and filed cross-bills praying for same relief as plaintiffs.

It is the contention of plaintiffs and the defendant water corporations that the City of Portland, under and by virtue of legislative authority conferred upon it, for many years last past has been engaged, as a public utility, in the business of supplying water to people residing beyond its corporate limits and in the vicinity of its water mains or conduits and that, by reason thereof, it is obliged to continue such service. Respondents would apply the same principles of law to the city as would control the operation of a private corporation likewise engaged. The ordinance requiring storage facilities is attacked on the ground that it is an unfair and unreasonable discrimination against those who reside outside the city limits and within the district from which this controversy has arisen. Some of respondents also assert that the ordinance is so uncertain and indefinite in its terms that it is impossible to ascertain therefrom the kind and character of the storage facilities required and hence should be given no force or effect.

The defense of the city is thus briefly summarized: (1) That it has no legislative authority conferred upon it, either by charter or statute, to engage in the water business, as a public utility, beyond its corporate limits; (2) Assuming that such power has been conferred, it has never been exercised, as the city has sold only surplus water under special contracts; (3) That the ordinance requiring the construction of storage facilities is a reasonable regulation, even though it be assumed that the city has, under legislative authority, operated as a public utility beyond its boundaries.

The trial court entered a decree enjoining the city from cutting off or ceasing to furnish water to the district, without requiring construction of storage facilities. The City of Portland appeals.

1–3. What authority has the city, as a public utility, to supply water to consumers beyond its corporate limits? It is elementary that a municipality, acting either in its governmental or proprietary capacity, can do so only by virtue of express or implied authority conferred upon it. Ordinarily, the jurisdiction of a municipality ceases at its boundaries and for it to exercise extraterritorial jurisdiction its power to do so must be clearly expressed: *Dunlap et al.* v. *City of Gainesville,* 147 Ga. 344 (94 S. E. 247); *Western New York Water Co.* v. *City of Buffalo,* 213 App. Div. 458 (210 N. Y. Supp. 611); 28 Cyc. 266. It is to be borne in mind that the charter of the City of Portland is a grant and not a limitation of power: *State ex rel.* v. *Funk,* 105 Or. 134 (199 Pac. 592, 209 Pac. 113, 25 A. L. R. 625). Power granted to supply the inhabitants of the City of Portland with water does not carry with it the implied authority to furnish water to those who are not its inhabitants: *Farwell* v. *City of Seattle,* 43 Wash. 141 (86 Pac. 217, 10 Ann. Cas. 130); *Stcitenroth et al.* v. *City of Jackson,* 99 Miss. 354 (54 South. 955). To warrant the city in supplying water beyond its boundaries it must be able to point out legislative authority for such act. Especially does this rule apply where it undertakes thus to engage in the water business as a public utility. Supplying water by a municipally owned system to those who are inhabitants of the city is essentially a municipal function. It is not so as to water supplied to those who reside outside of the city.

4. At this juncture let us turn to the charter and statutory provisions applicable to the question under consideration. Our attention is directed to Sections 226 and 234 of the Charter in effect in 1903. Section 226:

"The city is authorized and empowered to construct or purchase, keep, conduct and maintain waterworks and all necessary plants and facilities of a character and capacity sufficient to furnish the city and inhabitants thereof, as well as the places and people along or in the vicinity of the lines of pipes, conduits, or aqueducts constructed or used for such purpose with an abundance of good, pure wholesome water for all uses and purposes necessary for the comfort, convenience and well-being of the same and to that end may acquire by purchase or otherwise and own and possess such real and personal property within and without the limits of the city as in the judgment of the council may be deemed necessary and convenient, and for such purpose may also issue bonds and dispose of the same as hereinafter provided."

Section 234 in part provides:

"The water board has power and authority: * * (3) to establish rates as hereinafter provided for the use and consumption of the water by the city and inhabitants thereof, including the people living along a line or in the vicinity of the works outside the city. * * "

However, in 1913, the charter was amended by providing that the above sections of the charter (1903) "not inconsistent with the provisions of this charter (1913) shall remain in effect as ordinances only subject to repeal or amendment by the council in like manner and with like effect as other ordinances passed by the council."

Section 76 of the 1903 Charter was not affected by the amendment in 1913. So far as material herein, it provides as follows:

"The council of the City of Portland shall at all times, under the limitations herein set out, have power to provide by ordinance * * *for furnishing water to the inhabitants thereof; to provide for the acquisition, ownership, construction and maintenance of waterworks, * * and such other public utilities as the council may designate; provided, however, save as otherwise prescribed in this charter, no contract or agreement for the purchase, condemnation, ownership, construction or operation by the city of any public utility shall be entered into by the council without first submitting such proposed contract or agreement to the qualified voters of the city, in accordance with the provisions of this article."

Relative to the ownership and operation of public utilities by the city, Section 151 of the Charter, as amended in 1913, provides:

"The City of Portland shall have the power to construct, condemn, purchase, add to, acquire, maintain, operate and own all or any part of any public utility or any plant or enterprise for the purpose of serving the city and the people thereof for uses public and private. Such power may be exercised in any lawful manner and shall include the power to purchase, condemn or otherwise acquire any franchise heretofore granted to operate a public utility."

Section 153 thereof defines the term "public utility," as used in the charter:

" * * to include every plant, property or system engaged in the public service within the city or operated as a public utility as such terms are commonly understood."

Eliminating Sections 226 and 234 from our consideration as charter provisions, it is plain that no

power has been granted to the city under its charter to engage as a public utility in rendering water service beyond its corporate limits, although by virtue of Section 151 it may do so within the city.

Section 3768, Or. L., provides:

"Incorporated cities and towns, when the power to do so is conferred by or contained in their charter or act of incorporation are hereby authorized to build, own, operate and maintain waterworks, water systems, railways and railroads, electric light and power plants, within and without the boundaries of said corporation, for the benefit and use of the inhabitants thereof, and for profit, and to that end may in connection with their water systems, sell and dispose of their water for irrigation and other purposes to people residing without the boundaries of such municipal corporation * * ."

Section 3770 provides:

"That any incorporated city or town, within the State of Oregon, owning, controlling or operating a system of waterworks or electric light and power system for supplying water or electricity for its inhabitants, and for general municipal purposes, and any person, persons or corporation, controlling or operating any water system or electric light and power system under contract, lease or private ownership, shall have the right, and are hereby authorized and empowered to sell, supply and dispose of water or electricity from such system to any person, persons or corporation within or without the limits of such incorporated city or town in which such water or electric light and power system is operated, and to make contracts in reference to the sale and disposal of water or electricity from such system, for use within or without the corporate limits."

5. The above sections of the statute authorize the city to sell water to people residing outside of its boundaries, to the end that the water system may be

operated for the benefit and use of its inhabitants.
It is not within the purview of the statute to confer
authority upon a municipality to engage in a water
business as a public utility beyond its boundaries.
Such is a departure from the usual way in which a
municipal government functions, and where it is
doubtful whether such power has been conferred the
doubt should be resolved against the grant. Considering in their entirety the charter and statutory provisions applicable to the operation by the city of its
water system, we think it is thereby clearly intended
that the inhabitants of the city should have superior
rights as water consumers over the plaintiffs and
others similarly situated.

The water system was established at the expense of
the taxpayers of the city and a holding that those who
have not borne such burden shall have equal rights
therein would not be based on sound equitable principles. Authority is vested in the city to dispose of
surplus water, but its officials must not barter away
that which is in the nature of a public trust: *Pike's
Peak Power Co.* v. *City of Colorado Springs,* 105 Fed.
1. The water system was constructed primarily to
serve those who paid for it. When such projects are
undertaken by a municipality, the capacity of the
plant is generally in excess of its present use and it
is reasonable to assume that sale of surplus water
was contemplated. In 19 R. C. L. 790, it is said.

"Nor can it (referring to municipality), without
express statutory authority, supply water to premises
located outside the corporate limits, and when it is
so authorized its obligation is a matter of voluntary
contract and such authorization does not impose upon
it the duties of a public service corporation in the
territory which it undertakes to serve." Citing

*Childs* v. *Columbia,* 87 S. C. 566 (70 S. E. 296, 34 L. R. A. (N. S.) 542), which supports the text.

6, 7. It is true that if the city in supplying water to outside districts were engaged as a public utility, it would, by virtue of such status, be required to serve all water consumers therein without discrimination. Under such circumstances the law would impose the same obligations upon the city in supplying water as it would upon a private corporation likewise engaged: *Haugen* v. *Albina Light & Water Co.,* 21 Or. 411 (28 Pac. 244, 14 L. R. A. 424); *Twohy Bros. Co.* v. *Ochoco Irr. Dist.,* 108 Or. 1 (210 Pac. 873, 216 Pac. 189); *Tone* v. *Tillamook City,* 58 Or. 382 (114 Pac. 938); *Reigle* v. *Smith,* 287 Pa. 30 (134 Atl. 380); 3 Dillon on Municipal Corporations (5 ed.), § 1317. However, the City of Portland had no authority so to act and neither, as a matter of fact, did it do so. All of the contracts with water consumers beyond the city limits are for a fixed period of time and contain the reservation that the water is supplied subject to the superior rights of the inhabitants of Portland. The city has been and is willing to sell only surplus water. As stated in *Spear* v. *City of Bremerton,* 90 Wash. 507 (156 Pac. 825):

"If the time should come when there is no excess or surplus, the inhabitants of the city owning the plant would be entitled to the use of all the water and those who take the surplus would be cut off."

Respondents' right to an injunction must be predicated either upon the obligation of the city under the terms of an express contract or by reason of the duty which the law imposes upon it as a public utility corporation. The contracts with the city have expired. In the district in question the city was not acting as

the operator of a public utility. It therefore follows that the suit for injunction fails.

The decree of the Circuit Court is reversed and the suit for injunction is dismissed. Each party will pay its costs and disbursements in this and in the lower court.                    Reversed and Suit Dismissed.

Burnett, C. J., and Bean and Brown, JJ., concur.