A. S. TAYLOR, V. E. DURHAM and JOHN H. WRIGHT v. FRANK DIMMITT, Mayor of the City of Shelbina; EDWIN GILLISPIE, JOHN C. JEWETT, C. ED ADAMS and LELAND P. PRESLER, Aldermen of the City of Shelbina, Appellants.—78 S. W. (2d) 841.

Division Two, January 7, 1935.

*Rice G. Maupin* and *Harry J. Libby* for appellants.

*Lane B. Henderson* for respondents.

BOHLING, C.—Shelbina, Missouri, a city of the fourth class, owns, maintains and operates a municipal electric plant, furnishing light, heat and power for its own use and for sale to its inhabitants. Lakenan, Missouri, is an unincorporated village, located outside of and approximately five miles east of the corporate limits of Shelbina, and is without electric service. The city of Shelbina, having a surplus of electric energy from its municipal plant, contracted with prospective consumers residing in Lakenan and along a proposed electric transmission line to furnish electric service and construct an electric transmission line from its plant in Shelbina to Lakenan therefor. The city of Shelbina purchased materials for such transmission line and was proceeding to execute the contract and carry out the project. Thereupon, certain resident taxpayers (respondents here) of Shelbina instituted this action against the mayor and aldermen of the city of Shelbina (appellants here) to enjoin and restrain the erection or operation of said proposed electric transmission line.

Respondents, by appropriate pleadings, presented the contention, among others, that the city of Shelbina is without authority to construct, maintain and operate the proposed electric transmission line for the purpose of furnishing electric service to consumers outside the corporate limits of said city; because:

(1) Such action on the part of the city is in contravention of certain provisions of the Constitution of the State of Missouri, to-wit: Article 4, Section 46, prohibiting any city from making any grant of public money or thing of value to any individual, association of individuals, municipal or other corporation; Article 4, Section 47, prohibiting any city from lending its credit or from granting public money or thing of value in aid of or to any individual, association or corporation whatsoever; Article 9, Section 6, prohibiting any city from appropriating money or making a donation or loaning its credit to any other corporation, association or institution; and Article 10, Section 3, requiring taxes to be levied and collected for public purposes.

(2) The construction of the proposed electric transmission line is not authorized by any legislative enactment of the General Assembly of the State of Missouri.

The appellant denied the allegations of respondent's petition, and, at the close of the evidence, requested the court to give declarations of law to the effect that the action of the General Assembly in authorizing cities to sell their surplus electric energy and to that end to erect and maintain electric transmission lines for sale and delivery thereof outside of their corporate boundaries was not violative of Section 46, Article 4, or Section 47, Article 4 of the Constitution of the State of Missouri; and that the erecting and maintaining of the proposed electric transmission line out of the earnings of the municipal plant would not violate Section 6, Article 9, or Section 3, Article 10 of the Constitution of the State of Missouri, and that, if required in the future, the levying of taxes to maintain the proposed electric transmission line would be for a city purpose and not violative of Missouri constitutional provisions. The court refused these declarations of law and the issues thus presented are preserved for review.

Our jurisdiction rests upon the constitutional issues involved. Having jurisdiction, this court will determine the whole case, irrespective of the issue upon which the case may turn. [Skinner v. Railroad, 254 Mo. l. c. 230, 162 S. W. 237; State ex inf. v. Heffernan, 243 Mo. l. c. 449, 148 S. W. 90; State v. Chandler, 132 Mo. l. c. 164, 33 S. W. 797; State ex rel. v. Francis, 95 Mo. l. c. 48, 8 S. W. 1.]

Appellants base their position upon Sections 7641 and 7642, Revised Statutes 1929, and contend, since there can be no doubt that said Sections 7641 and 7642 expressly confer authority on Missouri

cities to sell surplus electric current to other municipalities and inhabitants and to persons and corporations outside the corporate limits of such cities, the power to erect a transmission line to deliver the current sold and thereby to effectuate the sale, would seem to be clearly within the expressed power granted to such cities, and that Section 7644, Revised Statutes 1929, is without influence on the issue presented.

Section 7641, Revised Statutes 1929, in so far as here material, provides:

"The city council of any city . . . in this state shall have power . . . to erect, purchase, acquire, maintain and operate . . . power plants, electric light plants, . . . and to maintain and operate such plants and to suply the inhabitants of such cities . . . with . . . lights . . . and power therefrom."

This section is in accord with the primary objects to be accomplished by a municipal corporation; that is, to promote the welfare and public interest of its inhabitants, and not the promotion of the interests of those residing outside its corporate boundaries.

The authority of Missouri cities to engage in the electric utility business was thus limited until 1911. In 1911, now Sections 7642, 7643 and 7644, Revised Statutes 1929, were enacted (Laws 1911, p. 351), constituting the whole of an act of the Legislature, under the title:

"AN ACT to amend article twenty-three, chapter eighty-four, Revised Statutes of Missouri, 1909, entitled 'Waterworks, light and power plants,' by adding thereto three new sections to be known as sections 9904a, 9904b, 9904c, authorizing cities owning light plants to supply other cities, persons and corporations with electric current; authorizing cities to procure electric current from other such cities; and authorizing cities to construct lines for conveying said current outside the limits of said cities."

Sections 7642, 7643 and 7644 provide:

"Sec. 7642.—Any city in this state, which owns and operates any electric light or power plant, may, and is hereby authorized and empowered to supply electric current from its light or power plant to other municipal corporations for their use and the use of their inhabitants, and also to persons and private corporations for use beyond the corporate limits of such city, and to enter into contracts therefor for such time and upon such terms and under such rules and regulations as may be agreed upon by the contracting parties."

"Sec. 7643.—Any city, town or village in this state, having authority to maintain and operate an electric light and power plant, may procure electric current for that purpose from any other city, owning and operating such plant, and to that end may enter into a contract therefor with such city having such plant."

"Sec. 7644.—Any city, town or village, which any city of this state, having an electric light or power plant, may agree to supply with electric current under the provisions of Sections 7642 and 7643, is hereby authorized and empowered to conduct said current from the city, agreeing to supply the same, and for that purpose to erect poles, piers, abutments, wires and other fixtures along, across or under any of the public roads, streets and water in such a manner as not to incommode or endanger the public in the use of said public roads, streets and waters, and to put in and maintain and operate all apparatus and devices necessary for and in conducting said current from the city agreeing to supply the same into its own limits in, upon, over and through any territory of this state outside, as well as within, the limits of said city, town or village."

The issue here does not involve the supply of electricity for the lighting of the streets of a city (an essential municipal, if not governmental, function) or the supply of electricity to inhabitants of the city (essentially a municipal function), but the right of a city to erect an electric transmission line to supply electric service to nonresident consumers. Even as to governmental functions, Missouri cities have or can exercise only such powers as are conferred by express or implied provisions of law; their charters being a grant and not a limitation of power, subject to strict construction, with doubtful powers resolved against the city. "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: (1) Those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those *essential* to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied." [St. Louis v. Kaime, 180 Mo. l. c. 322 (quoting 1 Dillon, Municipal Corp. (4 Ed.), p. 145); State v. Butler, 178 Mo. 272, 77 S. W. 560; St. Louis v. Dreisoerner, 243 Mo. 217, 147 S. W. 198; St. Louis v. King, 226 Mo. 334, 126 S. W. 495; Maryville v. Farmers' Trust Co., 226 Mo. App. 642, 45 S. W. (2d) 103.]

Counsel for appellants and respondents, in their respective briefs, concede that cities in owning, operating and maintaining electric utilities act in their proprietary, or business, as distinguished from governmental capacity. In rendering electric service to consumers outside their corporate boundaries they perform no municipal function, but depart from the primary objects for which they have existence, and enter a field of private business. Authority for such action, we think, should clearly appear. In Kennedy v. Nevada, 222 Mo. App. l. c. 467, 281 S. W. l. c. 60, speaking of the authority of a city to maintain a tourist camp within its boundaries, the court said: "Of course, a municipality has no implied power to engage

in a private business. [19 R. C. L., p. 788, sec. 95.]'' [See, also, State ex rel. v. Orear, 277 Mo. 1. c. 323, 210 S. W. 392, as to a city engaging in the ice business; 1 McQuillin Munc. Corp. (2 Ed.), secs. 375, 1952.] Usually, a municipality's jurisdiction ceases at its boundaries; and the very enactment of Laws 1911, page 351, constitutes legislative recognition of the applicability of that principle to the power here in question.

 We have examined the authorities cited by appellants on this issue. Some few of the cases hold that general authority in cities to supply utility service (without more) carries the implied authority on the part of the city to construct and maintain the necessary extensions of the distribution system to dispose of any surplus of the commodity. An examination of the statutory provisions involved in such cases discloses, however, that they are not sufficiently analogous to the applicable Missouri statutory provisions to be of controlling weight on this issue. Many of the cases involve express statutory provisions vesting cities with power ''within and without the corporate boundaries;'' ''to do all things in relation thereto (the subject matter) as natural persons;'' the right to exercise the power within a distance of ''ten miles from the corporate limits of the city;'' ''without their limits'' and ''beyond the limits thereof;'' the right to supply the service to ''ordinary municipal uses'' and to other purposes; ''to supply dwellers in other municipalities'' and extend their distribution system into such localities. Among such cases are: Muir v. Murray City, 55 Utah, 368, 186 Pac. 433 (Sec. 570x2, Comp. Laws Utah, 1917); Omaha v. Omaha Water Co., 162 Fed. 1. c. 236, 237, 218 U. S. 180, 54 L. Ed. 991, 30 Sup. Ct. 615 (Neb. Laws 1879, p. 99, sec. 27; Neb. Laws 1887, chap. 10, sec. 61; Neb. Comp. Stat. 1901, chap. 12a, sec. 27; Neb. Laws 1897, chap. 10, sec. 27; Neb. Laws 1903, chap. 12); Pike's Peak Power Co. v. Colorado Springs, 44 C. C. A. 333, 105 Fed. 1 (2 Mills Ann. Stat., secs. 4403, 4492, pars. 67, 68, 72); Fellows v. Los Angeles, 151 Cal. 52, 90 Pac. 137 (Secs. 1, 8 and 10, Act of March 12, 1885; Stat. 1885, pp. 95, 97, 98, chap. 115); Kearny v. Bayonne, 90 N. J. Eq. 1. c. 499, 107 Atl. 169 (Art. 32, chap. 152, N. J. Laws, 1917, secs. 14 and 16); Langdon v. Walla Walla, 112 Wash. 1. c. 451, 193 Pac. 1. [Secs. 7612, 8005, Rem. & Bal. Code (1910).] Mayo v. Dover & F. V. F. Co., 96 Me. 539, involved municipal action later ''ratified, confirmed and made valid'' by legislative action. Of course, cases involving express statutory authority are not determinative of the issue here presented. They are here listed on account of some broad assertions found in the books. Dyer v. Newport, 123 Ky. 203, 29 Ky. L. Rep. 656, 94 S. W. 25, is authority for respondents. It holds a city operating a municipal water plant may not accept a franchise from an adjoining city and extend its mains and pipes into such adjoining city for the purpose of fur-

nishing it and its inhabitants with water. The court (29 Ky. L. Rep. l. c. 658, 94 S. W. l. c. 26) explains the holdings in Henderson v. Young, 26 Ky. L. Rep. 1152, 83 S. W. 583, and Rogers v. City of Wickliffe, 29 Ky. L. Rep. 587, 94 S. W. 24 (all cited by appellants), as holding a city may legally sell any surplus utility product to outsiders. "But in each of these cases the outside purchasers took the product from the plant as constructed and operated by the city, and the latter was not bound or permitted to extend its facilities beyond the corporate limits in order to accommodate such purchasers." The Missouri cases mentioned by appellant (Speas v. Kansas City, 329 Mo. 184, 44 S. W. (2d) 108; Public Service Commission v. Kirkwood, 319 Mo. 562, 4 S. W. (2d) 773; and McMurry v. Kansas City, 283 Mo. 479, 223 S. W. 615) do not involve the issue upon which this case turns. The Speas case (which is the most analogous of the three) is authority upon the power of the city to sell or supply a utility service to nonresidents. Respondent is not here questioning this power of the city.

Recurring to the Act of 1911. Through now Section 7642, the Legislature extended the authority of any city owning and operating an electric "plant" so as to authorize such city to supply electric current "from its light or power plant" to other municipalities and also persons and private corporations "for use beyond the corporate limits of such city," and to contract in respect thereto. No provision whatsoever is found in the act for extending the existing plant beyond the corporate limits. The word "plant" in Section 7642, refers to the plant within the purview of Section 7641—a plant supplying the inhabitants of the city, not consumers outside the city. The current supplied is to be from "its light or power plant"— the plant in existence at the time the use of the service outside the corporate limits begins. By Section 7643 the Legislature authorized certain cities in this State to procure electric current from cities owning and operating an electric light and power plant. Having conferred the necessary authority upon the cities within the act to "supply," on the one hand, and "procure," on the other, electric current, the Legislature then proceeded to provide the means whereby the current was to be transmitted. The act presents a completed plan for accomplishing its purpose and should be read as a whole. It expressly authorized (Sec. 7644) the city procuring the electric current to conduct said current *"from the city"* supplying the same, and "for that purpose to erect" the necessary appliances and fixtures "along, across, or under any of the public roads, streets and waters . . .," as well as all other apparatus and devices "necessary for and in conducting said current *from the city* agreeing to supply the same into its own limits in, upon, over and through any territory of this state *outside,* as well as within, the limits of said city. . . ." No such authority is conferred upon the city supplying the electric current. The fact that the title of the Act of 1911 provides: ". . .

and authorizing cities to construct lines for conveying said current outside the limits of said city" when considered with the provisions of the act conferring such authority only upon the cities procuring electric current, precludes the implication that such lines are to be constructed by the supplying city. The title is broad enough to permit the vesting of such power in the city supplying the electric current, and the failure of the act to bestow the same leads to the conclusion the Legislature intended no such power to vest in the city supplying the current. The apparent logical conclusion to be drawn from the legislation is that the Legislature knowingly and purposely withheld (see Pub. Serv. Comm. v. Kirkwood, 319 Mo. l. c. 568, 4 S. W. (2d) l. c. 775) from the city owning the plant the authority to construct, maintain and operate an electric transmission line outside its corporate limits for the purposes within the act. Thus interpreted the legislation is in harmony with the dominant and primary purpose of municipal government. Absent, as here, any authority to extend its distribution system, it will not do to say that the supplying city may construct transmission lines to supply "persons and private corporation" while such authority is withheld from it in supplying municipal corporations. The maxim *expressio unius est exclusio alterius,* invoked in the construction of statutes (Keane v. Strodtman, 323 Mo. 161, 18 S. W. (2d) l. c. 898; State ex rel. v. Clifford, 228 Mo. l. c. 207, 128 S. W. l. c. 758) applied to this legislation also negatives the vesting of the power in question in the supplying city.

Although a conflict of authority exists (narrowed when consideration is given the varying statutory provisions), the majority rule accords with the above conclusion. The cases may be found in the annotation to Hyre v. Brown, 49 A. L. R. 1230, l. c. 1238, 102 W. Va. 505, 135 S. W. 656. See, for instance: Spear v. Bremerton, 90 Wash. 507, 511, 156 Pac..825; Sweetwater v. Hamner (Tex. Civ. App.), 259 S. W. 191, 195; Richards v. Portland, 121 Ore. 340, 255 Pac. 326; Dyer v. Newport, supra.

The city of Shelbina being without statutory authority to construct, maintain and operate an electric transmission line for the purpose of furnishing service to consumers outside its corporate boundaries, it is unnecessary to discuss the constitutional issues presented.

The judgment of the trial court is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.