[Civ. No. 11512. First Appellate District, Division Two.—October 29, 1940.]

CITY OF MILL VALLEY (a Municipal Corporation), Petitioner, v. STANLEY R. SAXTON, as City Treasurer, etc., Respondent.

H. C. Symonds, City Attorney, for Petitioner.

Thomas C. Nelson for Respondent.

Milton Marks and Morris Lowenthal, as *Amici Curiae,* on Behalf of Respondent.

NOURSE, P. J.—The petitioner seeks a writ of mandate to require the respondent to sign and execute certain municipal bonds authorized by the electors of the city to issue for the purpose of raising funds to acquire and operate a municipal transportation system, or bus line, between Mill Valley and San Francisco, and intermediate points. The city treasurer rests upon his demurrer to the petition, without answer. His position in brief is that the city should not be permitted to expend funds of the taxpayers for a service which in part would be for the benefit of nonresidents and nontaxpayers.

The controversy rests on section 19 of article XI of the Constitution, adopted October 10, 1911, which we quote in full: "Any municipal corporation may establish and operate public works for supplying its inhabitants with light, water, power, heat, transportation, telephone service or other means of communication. Such works may be acquired by original construction or by the purchases of existing works, including their franchises, or both. Persons or corporations may establish and operate works for supplying the inhabitants with such services upon such conditions and under such regulations as the municipality may prescribe under its organic law, on condition that the municipal government shall have

the right to regulate the charges thereof. A municipal corporation may furnish such services to inhabitants outside its boundaries; provided, that it shall not furnish any service to the inhabitants of any other municipality owning or operating works supplying the same service to such inhabitants, without the consent of such other municipality, expressed by ordinance.''

Respondent relies on *Taylor* v. *Dimmitt*, 336 Mo. 330 [78 S. W. (2d) 841, 98 A. L. R. 995], and *Dyer* v. *Newport*, 123 Ky. 203 [94 S. W. 25], holding that a city could not construct works beyond its boundaries to supply public utility service to nonresident consumers. We are not impressed with the applicability of those cases in view of our constitutional grant of power, nor with the reasoning of the opinions generally. ■ If a city is endowed with the power to sell excess utility service, the means of performance whereby the service can be made and supplied are necessarily implied in the grant of power to sell. It would serve no purpose to analyze the other cases cited by respondent holding that under the particular statute involved the attempted grant of the power was in violation of some constitutional limitation, or that the statute was not open to the construction contended for. The annotations on the subject appearing in volume 49 A. L. R., p. 1239, and in volume 98 A. L. R., p. 1001, must be read in the same light. The conclusion of the author that a city may not furnish public utility service beyond its corporate limits ''in the absence of statutory authority'' is a generalization which is not controverted here. It was because of this principle that our Constitution and statutes were enacted to expressly confer such power.

■ The respondent attacks the installation of the system on the ground that it would require the taxpayers of the city to support the transportation system not only for its own inhabitants but also for those of the traveling public outside its boundaries. This it is said might be a gift of public funds for private purposes and hence contrary to the provisions of article IV, section 31, of the Constitution. *Conlin* v. *Board of Supervisors*, 99 Cal. 17 [33 Pac. 753, 37 Am. St. Rep. 17, 21 L. R. A. 474], and *Goodall* v. *Brite*, 11 Cal. App. (2d) 540 [54 Pac. (2d) 510], are cited in support of the argument. Neither case is in point. They involved instances of direct gifts of public funds for private purposes.

Here we have a case where public service is exchanged for a compensation and it will not be assumed that the city will misuse the power by giving the transportation free. On the contrary, it will be presumed that the city will exercise the power fairly and in accordance with the purposes of the statutes. That nontaxpayers living outside the boundaries of the city may thus obtain an advantage at the risk of the taxpayers within the city is no more serious obstacle to the validity of the scheme than that nontaxpayers living within the city limits may enjoy the same advantage. But if this feature of the general scheme is objectionable on the ground stated, it goes to the entire plan of public utility service both within and without the municipal boundaries. If the plan is economically unsound for this reason, the objections raised are administrative and legislative, rather than judicial. ■ We have here to consider only that the Constitution and the statutes have conferred the power upon the city and the wisdom of the legislation is not a matter for us to decide.

■ *Amici curiae* advance the point that the constitutional section is not self-executing and that hence the city is without the power to act in the absence of a legislative enabling act. It is then contended that, since certain sections of the Municipal Corporations Act fail to mention bus lines specifically, the city is without power to establish them. Both the premise and the conclusion are erroneous. The Constitution expressly authorizes ''any'' city to establish and operate public works for ''transportation''. It expressly authorizes such city to furnish ''such services to inhabitants outside its boundaries''. Here is the grant of power. If the legislature should attempt by statutory enactment to deny or withhold that power as to any special class of cities its act would be clearly unconstitutional. If it attempted the same result indirectly by failing to mention the power in some corollary legislation, its act to that extent would have no effect on the constitutional grant. Counsel relies on *Oro Electric Corp.* v. *Railroad Com.,* 169 Cal. 466 [147 Pac. 118], and *People* v. *Willert,* 37 Cal. App. (2d) (Supp.) 729 [93 Pac. (2d) 872], both relating to the third clause of section 19 which covers the subject of the regulation of public utilities owned and operated by private persons or corporations. The cases do not touch upon the portions of the section with which we are concerned and have no relation to the issue before us.

*Utah Rapid Transit Co.* v. *Ogden,* 89 Utah, 546 [58 Pac. (2d) 1], is also cited. There the section of the Utah Constitution involved was a grant to municipalities to confer upon themselves certain powers through the adoption of a municipal charter—similar to sections 6, 8, 11, etc., of article XI of our state Constitution. There is no similarity between the provisions of the Utah Constitution and section 19, and the case cited has no bearing on the question presented—it merely held, in harmony with numerous decisions in this and other states, that a municipality may exercise only such functions as may be conferred upon it by the Constitution, its charter, or legislative enactment. Other cases cited by counsel are of like purport, and it would serve no purpose to prolong the discussion because here the power has been expressly conferred on the city by the Constitution.

Counsel for *amici curiae* cites numerous authorities from other jurisdictions holding generally that the rendering of public utility service to nonresidents of a municipality is such an unusual thing that it will not be construed to be a proper municipal function unless expressly so declared in specific terms. We may accept the reasoning of the opinions as of the time they were rendered, but our Constitution has made them inapplicable in this jurisdiction by its express delegation of the power.

In harmony with our interpretation of this section of the Constitution, cases holding legislative grants to municipalities to construct, operate, and aid transportation systems beyond the municipal boundaries are *Walker* v. *City of Cincinnati,* 21 Ohio St. 14 [8 Am. Rep. 24]; *Chicago B. & M. R. R. Co.* v. *County of Otoe,* 16 Wall. 667 [21 L. Ed. 375, 381]. It is not necessary to decide what should be the interpretation of the section if the primary service was intended to be for the benefit of nonresidents of the municipality, because the record does not present such a case.

We have heretofore stated that counsel's conclusion that the Municipal Corporations Act did not cover the activities proposed by the petitioner was erroneous. Section 862.15 of the act (Deering's Gen. Laws No. 5233) reads: "To acquire, own, construct, maintain and operate bus lines, street railways, steam railway spur tracks, telephone and telegraph lines, gas and other works for light, power and heat; public libraries, museums, gymnasiums, parks and baths . . . " If

this legislation adds anything to the constitutional grant to operate public works for "transportation" it must follow as of course that it must be interpreted in the light of the further grant found in the Constitution and that the statutory reference to the operation of "bus lines" must contemplate that such "services" may be furnished to "inhabitants outside its boundaries".

A similar argument is made by respondent in reference to the Municipal Bond Act of 1901 (Deering's Gen. Laws No. 5178). It is said that, since the act makes no specific mention of transportation, it must be assumed that the legislature did not intend to confer upon the cities of this class power to issue bonds for that purpose. Section 2 of the act declares that whenever the city authorities determine that the public interest and necessity demands the construction of "any municipal improvement, including bridges, waterworks, . . . or other works, property or structures, necessary or convenient to carry out the objects, purposes and powers of the municipality . . . " the city may order the submission of the proposition of incurring a bonded debt to the electors. We have seen that one of the "powers" of the city is to operate a public bus line. The city has regularly declared that the public interest or necessity demands the acquisition of such a transportatoin system as "necessary or convenient to carry out" these objects and powers. Again the instrument of "power" springs from the Constitution. The question of necessity or convenience is for the legislative body of the city to decide. There is no judicial function involved.

The argument is made by *amici curiae* that the respondent should not execute the bonds until the city and county of San Francisco has given its consent to the operation of the bus line as proposed by petitioner. It rests on those provisions of section 19 reading: "provided, that it shall not furnish any service to the inhabitants of any other municipality owning or operating works supplying the same service to such inhabitants, without the consent of such other municipality, expressed by ordinance". The argument is that, since the city and county of San Francisco owns and operates a transportation system within its own limits, the petitioner should not be permitted to operate a competing system over the streets of San Francisco without the latter's consent. The argument is not persuasive. The plan proposed by petitioner, as outlined in the initiating ordinance, is

to operate a bus line "between Mill Valley and San Francisco". So far as this record discloses, there has been expressed no intention to operate such service over any street or highway of the city and county of San Francisco. It is possible that all passengers would be deposited at the city limits and there avail themselves of such means of transportation as the city and county of San Francisco might provide. We cannot assume that the petitioner will arbitrarily operate its busses over the streets of San Francisco without the latter's consent, and it would therefore be an assumption contrary to the facts presented by the record if we were to say that the proposed plan of the petitioner contemplated service "to the inhabitants of any other municipality owning or operating works supplying the same service to such inhabitants".

But a more serious question is whether the point is properly before us for consideration. This is a petition for a writ of mandate to require the respondent to sign and execute the bonds. The writ issues to compel a public officer to perform a duty specially enjoined upon him by law. (Code Civ. Proc., sec. 1085.) Where the duty of a public officer is clearly defined by statute and is purely ministerial, no question of discretion arises. It is the statutory duty of the city treasurer to sign and execute municipal bonds which have been legally authorized. It is the duty of the city council to cause them to be issued and sold, and to expend the proceeds.

It is not competent for a public official to refuse to perform a duty enjoined upon him by law upon the mere suspicion that his act might enable some other official to breach the duty imposed upon him. Hence, the argument of counsel for *amici curiae* (which is found in the argument alone, and not in any pleading) that the city treasurer might believe that the proceeds of the bonds might be unlawfully used by the city council in the operation of a bus line over the streets of San Francisco is a mere suspicion or conjecture that the council might fail to perform its duty. It is no defense to these proceedings.

Some allegations were made by *amici curiae* in a petition for intervention which he now states were charges of fraud upon the city officials. Counsel now asks that we state in this opinion that we did not find these allegations insufficient. The petition for intervention was denied upon general grounds without opinion, and it must be deemed to have been denied upon any ground in issue that would support the

decision. We cannot say at this time that it was denied upon grounds other than that it failed to plead facts sufficient to entitle the petitioner to the relief prayed for. To do so now would be mere *obiter*.

Let a peremptory writ of mandate issue as prayed.

Sturtevant, J., and Spence, J., concurred.