## Shive et al. v. Halifax Borough

*Sidney Friedman*, for plaintiffs.

*P. W. Fetterhoff* and *Homer L. Kreider*, for defendant.

RUPP, P. J., March 28, 1949.—Plaintiffs filed a complaint in mandamus seeking to compel the Borough of Halifax to furnish them with water.

The complaint as amended pleads, inter alia, that plaintiffs own and are planning to occupy two dwelling houses located in the Village of Matamoras, Halifax Township, and outside the limits of the Borough of Halifax; that the borough owns and operates a water company and furnishes water to persons residing within and beyond the borough limits; that the borough obtains its principal supply of water from mountain springs located outside the borough limits,

on Peters Mountain, from which source the water flows through a pipe laid in the public highway, passing through the Village of Matamoras, to a reservoir located near the Halifax Borough line; that plaintiffs' properties abut on the highway in which the water main of the borough is laid; that in the general area of plaintiffs' properties, and outside the borough limits, approximately 54 persons whose properties abut on the water main of the borough have been permitted to tap the main and are being supplied with water by the borough; and that the borough has refused plaintiffs' request that they also be permitted to tap the water main in order that the borough may furnish water to their properties for domestic purposes.

The prayer of the amended complaint is that the court enter judgment against defendant and direct it to permit plaintiffs to tap the water main in order that defendant may furnish them with water.

Defendant filed an answer in which, inter alia, it averred that it refused plaintiffs' request pursuant to a borough ordinance enacted on July 1, 1947, prohibiting the tapping of the water main between the borough's reservoir and the source of supply on Peters Mountain in order to conserve the borough's insufficient water supply for, and protect the public health of, the residents of the borough.

Defendant subsequently moved for the dismissal of the amended complaint and for the entry of judgment in its favor on the ground, inter alia, that this court lacks jurisdiction of the subject matter set forth in the amended complaint, such jurisdiction being vested by law in the Public Utility Commission.

At the court's direction, argument was had before the court en banc on the limited question of jurisdiction.

The sole question for our determination therefore is: Does the court of common pleas have jurisdiction

to entertain a complaint in mandamus seeking to compel a municipal corporation which owns and operates a water company, and furnishes water within and beyond its corporate limits, to furnish water to additional properties located beyond the corporate limits?

It is the contention of plaintiffs that the court has concurrent jurisdiction with the Public Utility Commission by virtue of section 917 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1357, which reads, in part, as follows:

"Except as otherwise expressly provided, none of the powers or duties conferred or imposed by this act upon the commission . . . shall be construed in anywise to abridge or impair any of the obligations, duties, or liabilities of any public utility . . . in equity or under the existing common or statutory law of the Commonwealth; but all such obligations, duties, and liabilities shall be and remain as heretofore. And except as otherwise provided, nothing in this act contained shall in any way abridge or alter the existing rights of action or remedies in equity or under the common or statutory law of the Commonwealth, it being the intention that the provisions of this act shall be cumulative and in addition to such rights of action and remedies."

This contention overlooks the fact that the act expressly provides otherwise with respect to public utility service rendered by a municipal corporation beyond its corporate limits.

Thus, section 202, as amended, reads, in part, as follows (66 PS §1122):

"Upon approval of the commission, evidenced by its certificate of public convenience first had and obtained, and upon compliance with existing laws, and not otherwise, it shall be lawful:

.    .    :    .    .    .    .    .    .    .

"(g) For any municipal corporation to acquire, construct, or begin to operate, any plant, equipment, or other facilities for the rendering or furnishing to the public of any public utility service beyond its corporate limits."

Section 301, as amended, reads as follows (66 PS §1141):

"Every rate made, demanded, or received by any public utility, or by any two or more public utilities jointly, shall be just and reasonable, and in conformity with regulations or orders of the commission: Provided, That only public utility service being furnished or rendered by a municipal corporation, or by the operating agencies of any municipal corporation, beyond its corporate limits, shall be subject to regulation and control by the commission as to rates, with the same force, and in like manner, as if such service were rendered by a public utility."

Section 401 reads, in part, as follows (66 PS §1171):

"Any public utility service being furnished or rendered by a municipal corporation beyond its corporate limits shall be subject to regulation and control by the commission as to service and extensions, with the same force and in like manner as if such service were rendered by a public utility."

It is therefore clear that under the above provisions of the Public Utility Law, before a municipal corporation may acquire, construct, or begin to operate any plant, equipment or other facilities for the rendering of public utility service beyond its corporate limits, it must obtain the approval of the Public Utility Commission, evidenced by its certificate of public convenience; and that public utility service rendered by a municipal corporation beyond its corporate limits is subject to regulation and control by the commission as to rates, service and extensions.

It follows that it is within the jurisdiction of the Public Utility Commission to determine whether the Borough of Halifax shall furnish water to plaintiffs, who reside beyond the borough limits, and that therefore this court does not have jurisdiction to entertain the present complaint in mandamus.

The Public Utility Law having vested jurisdiction of the above matters in the commission, it is obvious that Reigle v. Smith et al., 29 Dauph. 148 (1926), affirmed in 287 Pa. 30 (1926), and other cases decided prior to the enactment of the law and relied upon by plaintiffs, have no bearing on the question now before the court.

As to the cases cited by plaintiffs which were decided subsequent to the passage of the act—Ambridge Borough v. Pennsylvania Public Utility Commission, 137 Pa. Superior Ct. 50 (1939), involved the question whether a borough supplying water from its plant to persons within and beyond the corporate limits may establish a rate schedule for customers without the borough different from that used in the borough. Far from sustaining plaintiffs' position on the question of jurisdiction, this case was an appeal from an order of the *commission*, and in the course of its opinion the Superior Court said (p. 53) :

"The Public Service Company Act of 1913, P. L. 1374, gave the Public Service Commission no power of supervision or regulation over the rates charged by a municipal corporation which furnished water or other public service to its inhabitants or to customers residing outside its limits. But the Public Utility Law of May 28, 1937, P. L. 1053, in section 301, 66 PS Supp. sec. 1141, provides: 'That any public utility service being furnished or rendered by a municipal corporation beyond its corporate limits, shall be subject to regulation and control by the commission as to

rates, with the same force, and in like manner, as if such service [that is, the service beyond its corporate limits] were rendered by a public utility."

Bell Telephone Company of Pennsylvania v. Philadelphia Warwick Co., 355 Pa. 637 (1947), likewise is not in point. What the Supreme Court there held was that the court of common pleas has jurisdiction over the cause of action in a suit in assumpsit by a public utility to recover its charges, as distinguished from the jurisdiction of the Public Utility Commission to regulate such charges.

Accordingly, the amended complaint must be dismissed.

And now, March 28, 1949, the amended complaint is hereby dismissed for want of jurisdiction.